**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **RICHARD DEPUE AND ROBIN FIORETTI,** individually and on behalf of all others similarly situated, | ) | Case No. |
| Plaintiffs, | ) | |
| v. | ) | CLASS ACTION |
| | ) | **JURY TRIAL DEMANDED** |
| **EXACT CARE PHARMACY, LLC** an Ohio limited liability company, | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Richard Depue and Robin Fioretti (collectively, "Plaintiffs") bring this Class Action Complaint against Defendant Exact Care Pharmacy, LLC ("Defendant" or "Exact Care") to: (1) stop Defendant's practice of placing calls using an artificial or pre-recorded voice to the cellular telephones of consumers nationwide without their prior express consent; (2) to stop Defendant's practice of failing to transmit the required Caller ID information when placing telemarketing calls; (3) enjoin Defendant from continuing to place unsolicited telemarketing calls, including those featuring an artificial voice, calls to consumers who did not provide their prior express consent to receive them and without transmitted the required Caller ID information; and (4) obtain redress for all persons injured by Defendant's conduct. Plaintiffs also seek an award of statutory damages to the members of the Classes, plus court costs and reasonable attorneys' fees.

Plaintiffs, for their complaint, alleges as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## PARTIES

1. Plaintiff Depue is a natural person over the age of eighteen (18) and a resident and citizen of the State of California. Depue resides in Sacramento, California.

2. Plaintiff Fioretti is a natural person over the age of eighteen (18) and a resident and citizen of the State of Mississippi. Fioretti resides in Byhalia, Mississippi.

3. Defendant Exact Care Pharmacy, LLC is a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business located at 8333 Rockside Road, Valley View, Ohio 44125.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227, et seq., a federal statute. This Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because the alleged Classes consist of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA applies.

5. This Court has personal jurisdiction over Exact Care because it is headquartered in Cuyahoga County, it solicits significant business in this District, has entered into business contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant is headquartered in this District, solicits a significant amount of business within this District, and because a significant portion of the wrongful conduct giving rise to this case occurred in and/or emanated from this District.

## COMMON ALLEGATIONS OF FACT

7. Defendant is a retailer of pharmaceutical and other medical products.

8. Unfortunately for consumers, Exact Care casts its marketing net too wide. That is, in an attempt to aggressively promote its business and to generate leads for its products, goods, and services, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that repeatedly makes unsolicited phone calls to consumers' telephones including cellular telephones without any prior express consent to make such calls.

9. To make matters worse, Exact Care places these calls using an artificial voice and without transmitting its name as caller identification information.

10. The Telephone Consumer Protection Act 47 U.S.C. § 227, *et seq.* ("TCPA") and its implementing regulations, 47 C.F.R. § 64.1200, *et seq*. prohibit companies and persons, such as Defendant, from placing calls using an artificial or pre-recorded voice to cellular telephones without first obtaining prior express consent. Defendant has violated, and continues to violate, the TCPA and its regulations by placing calls to cellphone subscribers using an artificial voice who have not given prior express consent to receive such calls.

11. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020). The TCPA was enacted to protect consumers from unauthorized calls like those alleged in this Complaint.

13. By making the telephone calls at issue in this Complaint, Defendant has caused Plaintiffs and other consumers actual harm. This includes the aggravation, nuisance and invasions of privacy that result from the receipt of such calls, in addition to the wear and tear on their telephones, consumption of battery life, lost cellular minutes, loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls, in the form of the diminished use, enjoyment, value, and utility of their telephone plans. Furthermore, Defendant made the calls knowing that they interfered with Plaintiff and the other class members' use and enjoyment of, and the ability to access, their cellphones, including all related data, software, and hardware components.

14. Defendant knowingly made, and continues to make, telemarketing calls without the prior express consent of the recipients and without transmitting the required Caller ID information. As such, Defendant not only invaded the personal privacy of Plaintiffs and members of the alleged Class, it also intentionally and repeatedly violated the TCPA. Defendant was, and is, aware that the calls described herein were made to consumers like Plaintiff who have not consented to receive them and in violation of the TCPA

15. To the extent any third party made the calls, the third party acted on behalf of Defendant, at Defendant's direction and control, for Defendant's knowing benefit, and with Defendant's approval, and/or Defendant ratified the making of any such calls.

16. To redress these injuries, Plaintiffs, on behalf of themselves and the Classes of similarly situated individuals defined below, bring this suit under the TCPA. On behalf of the Class, Plaintiffs seek an injunction requiring Defendant to cease all unauthorized calling activities and an award of statutory damages to the class members, together with pre and post-judgment interest, costs and reasonable attorneys' fees.

## FACTS SPECIFIC TO PLAINTIFF DEPUE

17. Plaintiff Depue is the subscriber to and customary user of the personal cellular telephone number ending in 6063.

22. On January 12, 2026, Depue received a call on his personal cellphone from the number 916-305-3538.

23. When Depue answered the call, he was greeted by an artificial voice. Depue knew that he was speaking to an artificial voice because it did not speak naturally. There were periods of awkward pauses which would not have occurred—and generic statements which would not have been made—if he were speaking to a live human being. Depue's lived experiences led him to easily conclude that the voice was unmistakably an artificial, non-human voice.

24. The artificial voice solicited Depue to purchase mail-delivered medications, asking him if he is diabetic and if he is interested in having his medication delivered directly to his home. After Depue played along to discover who was calling him, the artificial voice transferred him to a live agent.

25. The live agent came on the line and (unlike the artificial voice) was unmistakably a human being. She identified herself as Janet Robertson or Robinson from Exact Care Pharmacy. Janet then proceeded to solicit Depue to purchase Defendant's pharmaceutical products and delivery services.

26. Plaintiff Depue does not have a relationship with Defendant, has never provided his telephone number to Defendant, and has never requested that Defendant or anyone else acting on Defendant's behalf, place calls to him or offer him its products and services using an artificial voice. Plaintiff Depue has never provided any form of prior express written consent for

Defendant to place artificial voice calls to him and has no other prior relationship with Defendant.

## FACTS SPECIFIC TO PLAINTIFF FIORETTI

31. Plaintiff Fioretti is the subscriber to and customary user of the personal cellular telephone number ending in 7133. Fioretti placed her number on the National Do Not Call Registry on or around July 11, 2019 specifically to avoid receiving calls like those at issue in this case.

32. Beginning in September 2025, Fioretti received a series calls from Exact Care. The calls were received on the following dates from the following numbers:

September 3, 2025 – 901-523-9687

November 17, 2025 – 901-523-7942

January 22, 2026 – 901-523-1093 (4 calls)

February 4, 2026 – 901-523-9960 (2 calls)

February 17, 2026 – 901-523-1981 (4 calls)

February 24, 2026 – 901-523-9485

33. On information and belief, each of these calls was placed by Defendant (or by a third-party hired by Defendant to place telemarketing calls on its behalf and for its benefit).

34. Fioretti answered the September 3rd and November 17th calls and was solicited during both calls to purchase Defendant's products and services, specifically medications delivered to her door. On each of these calls, Fioretti informed the caller that she was not interested, yet she received more calls.

35. Fioretti also answered the February 24th call and was solicited to purchase Defendant's products and services, specifically medications delivered to her door, as with the

two previous calls she answered. This time, and in an attempt to learn more about who was calling, Fioretti asked for a call back number and was given 877-355-7225. This 877 number is Exact Care's phone number.

36. Each call displayed only a phone number and not the name of the telemarketer on the Caller ID—the name was not transmitted.

37. Moreover, on information and belief, Exact Care was "spoofing" its number and not displaying an accurate phone number—this is why only the last 4 digits of the number changed with each call. Such conduct made it impossible for Fioretti to know who was calling without answering the call, and it also made it impossible to block the receipt of further calls, since the number changed each time.

38. Fioretti has never provided her telephone number to Defendant, has never had a business relationship with Defendant, and did not opt-in to receive any solicitations from Defendant.

## CLASS ACTION ALLEGATIONS

39. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and the Classes defined as follows:

> **Artificial Voice Class:** All persons in the United States who (1) Defendant, or a third person acting on behalf of Defendant, called; (2) on the person's telephone; (3) for the purpose of selling Defendant's products and services; (4) using an artificial voice; and (4) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call Plaintiff Depue, or where there is no alleged consent.

> **Caller ID Class:** All persons in the United States from four years prior to the filing of this action through the date notice is sent to the Class who (1) received more than one call made by or on behalf of Exact Care for the same purpose as the calls placed to Plaintiff Fioretti, (2) on the person's cellular telephone, (3) where the name of the telemarketer or the seller was not transmitted to the called party as caller identification information.

40. The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons. Plaintiffs anticipate the need to amend the class definitions following appropriate discovery.

41. **Numerosity:** The exact number of members within each Class is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has violative calls to thousands of consumers who fall into the defined Classes. Members of the Classes can be objectively identified through reference to Defendant's records, consumer phone records, and other evidence to be gained in discovery.

42. **Typicality:** Plaintiffs' claims are typical of the claims of other members of the Classes, in that Plaintiffs and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct. Plaintiffs are members of the Classes.

43. **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions, specifically class actions under the TCPA. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to either Plaintiff.

44. **Commonality and Predominance:** There are several questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any

questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant systematically made telephone calls to individuals who did not previously provide Defendant and/or its agents with their prior express consent;

(c) Whether the calls featured an artificial or pre-recorded voice;

(d) Whether a third party made the calls on Defendant's behalf for Defendant's benefit;

(e) Whether the calls were for telemarketing purposes;

(f) Whether Defendant and/or its telemarketers systematically failed to transmit the telemarketer and/or seller's name as Caller ID information, and whether such transmission was available to Defendant and/or its telemarketers; and

(g) Whether the Plaintiffs and the other members of the Classes are entitled to statutory damages and whether Defendant acted willfully so as to require an award of treble damages.

45. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain

effective relief from Defendant's misconduct. Even if class members could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.***
**(On behalf of Depue and the Artificial Voice Class)**

46. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

47. Defendant (or a third-party acting on its behalf and for its benefit) made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Depue and the other members of the Artificial Voice Class—without their prior express written consent—in an effort to generate leads for Defendant's products and services.

48. Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

49. Defendant made the calls using an artificial voice or similar technology.

50. By making unsolicited telephone calls to Depue and members of the Class's telephones without prior express consent, and by utilizing an artificial or pre-recorded voice, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

51. As a result of Defendant's unlawful conduct, Depue and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

52. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Depue and the other members of the Pre-Recorded No Consent Class.

**SECOND CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.***
**(On behalf of Fioretti and the Caller ID Class)**

53. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

54. The TCPA's implementing regulations provide in part that:

> Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) must transmit caller identification information.
> (1) For purposes of this paragraph, caller identification information must include either CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer.

47 C.F.R. § 64.1601(e).

55. "Caller identification information" means "information provided by a caller identification service regarding the telephone number of, or other information regarding the origination of, a call made using a voice service or a text message sent using a text messaging service." 47 C.F.R. 64.1600.

56. "Caller identification service" means "any service or device designed to provide the user of the service or device with the telephone number of, or other information regarding the origination of, a call made using a voice service or a text message sent using a text messaging service."

57. Defendant failed to transmit the name of the telemarketer or the seller as part of the caller identification information when placing the calls to Fioretti and the Caller ID Class.

58. This Caller ID service (transmission of the name of the telemarketer) was, on information and belief, available to Exact Care.

59. Defendant also spoofed numbers, concealed the real number it was calling from, and thus failed to transmit an accurate phone number to which a do not call request could be made.

60. There is a private right of action under this regulation, pursuant to 47 U.S.C. § 227(c)(5). *See Donbronski v. Selectquote Ins. Servs.*, Case No. 2:23-cv-12597, 2025 U.S. Dist. LEXIS 54413 (E.D. Mich. Mar. 25, 2025); *Newell v. JR Capital, LLC*, 2025 U.S. Dist. LEXIS 136118, at *21 (E.D. Pa. July 16, 2025).

61. As a result of Defendant's unlawful conduct, and/or the conduct of Defendant's agents on or for Defendant's behalf, Fioretti and the members of the Caller ID Class are entitled, under Section 227(c)(5)(B), are each entitled to, *inter alia*, a minimum of $500 in statutory damages for each such violation of the TCPA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiffs as the representatives of the Classes and appointing their counsel as Class Counsel;

B. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiffs and the Class Members;

C. An order declaring that Defendant's actions, as set out above, violate the TCPA;

E. An injunction requiring Defendant to cease all unsolicited calling activities, and otherwise protecting the interests of the Class;

F. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above;

G. An award of pre- and post-judgment interest; and

H. Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff request a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: May 14, 2026

**RICHARD DEPUE and ROBIN FIORETTI**, individually and on behalf of all others similarly situated,

By: _/s/ /s/ William M. Harrelson II
One of Plaintiffs Attorneys

William McAllum Harrelson, II
HARRELSON & HARRELSON LLP
9 West Water Street
Troy, Ohio 45373
Telephone: (937) 552-9400

Facsimile: (937) 552-9361
Email: Will@HarrelsonLLP.com

Patrick H. Peluso*
ppeluso@pelusolawfirm.com
Peluso Law, LLC
865 Albion St., Suite 250
Denver, Colorado 80220
Telephone: (720) 805-2008

Attorneys for Plaintiffs and the Classes
*pro hac vice admission to be sought